JOURNAL ENTRY AND OPINION
Gina Hoon appeals from a decision of the common pleas court granting summary judgment in favor of Superior Tool Company; its Chairman and Chief Executive Officer, Howard Garfinkel; its President and Chief Operating Officer, Charles Mintz; and Jose Miguel Cintron in connection with her claims of hostile work environment, sexual harassment, retaliatory discrimination, and intentional infliction of emotional distress. On appeal, Hoon contends the court erred in granting summary judgment on her claims of sexual harassment and retaliatory discrimination. After a careful review of the record and applicable law, we conclude that her contentions are not well taken and therefore affirm the judgment of the court.
The record reveals that Superior has a company policy in place which prohibits harassment of employees by other employees or supervisors; its policy includes the requirement that employees report acts of harassment immediately. Each employee is required to sign an Acknowledge/Receipt Page, which certifies that he or she has received the Employee Handbook containing the company's policies and rules.
On June 2, 1999, Hoon began working for Superior in its shipping department, with supervisory authority over four employees, including Cintron. On October 15, 1999, Hoon met with Mintz to discuss a personnel problem involving one of her subordinates. After discussing that matter, when Mintz asked Hoon if she needed to discuss any other matters, Hoon brought up her concerns about being harassed by "Mike" Cintron and Darrell Turner, stating that they put their arms around her, patted her on the back, and made inappropriate comments to her. She related that Cintron had also pinned her between himself and another employee and grabbed her crotch area; that he would smack her on her rear end; that he had once grabbed her and kissed her in the lunchroom; and that, while she worked on the computer, he would come up behind her and either blow in her ear or try to kiss her on the neck.
After this meeting, Mintz spoke with Cintron and Turner and told them to cease any conduct toward Hoon that could possibly be construed as harassment.
On October 18, 1999, Hoon resigned from Superior, for reasons unrelated to Cintron's behavior. Two days later, Hoon met with Mintz and asked to be allowed to return to Superior; Mintz inquired of Hoon about the problems with Cintron and Turner, and she agreed to immediately report any subsequent sexual harassment to him.
Thereafter, Hoon did not encounter inappropriate conduct by Turner, and, for a period of time, she did not experience harassment from Cintron either.
Six months later, on April 17, 2000, however, Hoon informed Superior that the problems with Cintron reoccurred. Mintz immediately spoke to Cintron and told him not to touch or make inappropriate comments toward Hoon; in addition, Superior transferred Cintron from the shipping department to the receiving department, in an effort to minimize the contact between Cintron and Hoon. After this transfer, Hoon did not experience any further inappropriate sexual conduct by Cintron for the remainder of her employment with Superior.
On June 12, 2000, Superior provided Hoon with a performance review, which set forth goals for her in the coming year and recommended a re-evaluation in six months to review her new responsibilities.
The next day, Hoon called Mintz at home complaining that Turner told her that Cintron had said to him that he would kill Hoon if he saw her in the street — though she later admitted that Turner also told her that he thought Cintron was joking. Mintz immediately inquired about Cintron's remark and was told by Turner that Cintron's comment had been made as a joke. Mintz then gave Hoon the opportunity to work in the office that day, away from Cintron, and ordered an investigation into this incident; Hoon decided to go home instead.
The following day, Hoon told Annette Dockus, a supervisor, that Superior must either terminate Cintron or she would resign.
Subsequently, on June 20, 2000, Superior presented a severance agreement to Hoon which it alleges to have been prepared at her request; Hoon, however, alleges that she was horrified to be presented with a severance agreement. She never signed it nor returned to work after that date. Hoon described later in a deposition the circumstances surrounding her departure from Superior as follows:
 Q. . . .[Y]ou also claim that you were subjected to what you've characterized as retaliatory acts. What makes you say that?
 A. Because when I complained the third time, said somebody had to go, they chose me and I did nothing wrong.
Q. Anything else that makes you say that?
A. No.
On July 13, 2000, Hoon filed the instant action against Superior, Garfinkel, Mintz, and Cintron, claiming sexual harassment and retaliatory discrimination in violation of R.C. 4112.02, and also claiming intentional infliction of emotional distress.
After discovery, the defendants moved for summary judgment on each of Hoon's claims, and the trial court granted this motion.
Hoon now appeals from that decision to grant summary judgment on her sexual harassment and retaliatory discrimination claims, and raises two assignments of error for our review, the first of which states:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLTF-APPELLANT IN GRANTING DEFTS-APPELLEES MOTION FOR SUMMARY JUDGMENT ON PLTF-APPELLANT'S CLAIMS OF HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT.
Hoon asserts that the court improperly granted summary judgment in favor of the defendants because genuine issues of material fact exist regarding the elements of her sexual harassment claim. Superior contends that Hoon cannot establish her sexual harassment claim against Superior, Garfinkel, or Mintz, because no genuine issues of material fact exist regarding several essential elements of that claim; it further contends that her claim against Cintron is not actionable because he was neither her manager nor her supervisor.
We review summary judgment by applying a de novo standard of review.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.
The Ohio Supreme Court restated the standard for summary judgment inZivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-70,696 N.E.2d 201 as follows:
 Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
Regarding her claim of sexual harassment, we recognize that R.C. 4112.02
provides, in relevant part:
It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
In Hampel v. Food Ingredients Specialties, Inc. (2000),89 Ohio St.3d 169, 729 N.E.2d 726, 732, the court stated, in paragraph one of its syllabus:
 1. A plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination "because of * * * sex" by proving either of two types of sexual harassment: (1) "quid pro quo" harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) "hostile environment" harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment.
Here, Hoon complains of hostile work environment sexual harassment.
As an initial matter, we recognize that federal cases applying Title VII are generally applicable to cases involving R.C. 4112. Genaro v.Cent. Transport, Inc. (1999), 84 Ohio St.3d 293, 703 N.E.2d 782.
To establish a prima facie claim of sexual harassment, however, Hoon must establish all four elements described in Hampel, supra, where the court stated, in paragraph two of its syllabus:
 2. In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.
We consider first Hoon's claim against Superior, Garfinkel, and Mintz.
Regarding the second prong, Hoon has established, and Superior agrees, that Cintron's conduct toward her was based on sex; therefore, we do not need to consider this element.
Regarding the first prong and third prong, given our review of the record, we conclude that Hoon's allegations are sufficient to create genuine issues of material fact.
As to the first prong, which requires Hoon to prove that the conduct complained of is unwelcome, Superior asserts that Hoon had socialized with Cintron outside of work, as evidenced by the fact they had gone to a bar together after the company holiday party, asked him over to her house to help move a washing machine, and had given him a dining room table. Hoon maintains that she had gone to the bar without expecting Cintron to be there; and that she only asked for help from Cintron reluctantly, as she could not find anyone else for help. Thus, a genuine issue of material fact exists as to whether Cintron's sexually oriented conduct toward Hoon had been unwelcome.
Similarly, a genuine issue of material fact exists as to whether Cintron's conduct was sufficiently severe or pervasive as to affect the terms, conditions, or privileges of her employment, given Hoon's allegations that Cintron smacked her rear end, grabbed her crotch, grabbed and kissed her, and blew in her ear.
Regarding the fourth prong, which requires either that the alleged harasser is a supervisor or that the employer knew or should have known of the alleged harassment but failed to take immediate and appropriate corrective action, it is undisputed that Cintron was not a manager or a supervisor of Hoon; therefore, the issue for review concerns whether Superior took immediate and appropriate corrective actions following its knowledge of the alleged harassment.
The record indicates that Superior has a firm policy of prohibiting sexual harassment and requires an employee to immediately report acts of harassment. The record further indicates that after Hoon's first complaint of Cintron and Turner, Superior admonished them and told them to cease any inappropriate conduct toward her, which apparently had been effective because Turner stopped any further inappropriate conduct toward her and she did not complain about Cintron again until six months later. As to this second complaint, Superior responded by transferring Cintron to another area to minimize Hoon's contact with him. This measure apparently had also been effective because it stopped any further inappropriate sexual conduct by Cintron for the remaining duration of her employment with Superior. As to the final incident, where Cintron made the comment to Turner that he would kill Hoon if he saw her in the street, Mintz offered to transfer her when informed by Hoon of this incident and further ordered an investigation into it. Given this record, Hoon has not demonstrated that Superior failed to take immediate and appropriate corrective action. Hoon maintains that the appropriate corrective action to be taken by Superior under the circumstances would have been to terminate Cintron's employment. We do not agree.
As reflected in Hampel, in order to succeed in her claim of sexual harassment against Superior, Garfinkel, and Mintz, Hoon has the burden to establish all four prongs of her prima facie case. Because Hoon failed to demonstrate genuine issues of material fact exist regarding the fourth element, the trial court properly granted summary judgment on this claim.
With respect to Hoon's claim against Cintron, we are called upon to resolve the issue of whether a R.C. 4112.02 action lies against a non-supervisor or non-manager such as Cintron: Hoon maintains that R.C. 4112 encompasses any individual employee, while Superior maintains that R.C. 4112 liability only extends, beyond employers, to supervisors or managers.
R.C. 4112.02 proscribes discriminatory conduct by an "employer", which 4112.01(A)(2) defines as follows:
 (2) "Employer" includes the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer.
Hoon cites Genaro v. Cent. Transport, supra, to support her position. In that case, the question of whether employer liability under R.C. 4112 extends to a supervisor or manager for his or her conduct in violation of R.C. 4112 was certified for the court's determination. The court answered the question in the affirmative, stating:
 * * * [W]e believe that the clear and unambiguous language of R.C. 4112.01(A)(1) and (A)(2), as well as the salutary anti discrimination purposes of R.C. Chapter 4112, and this court's pronouncements in cases involving workplace discrimination, all evidence that individual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment. Accordingly, we answer the certified question in the affirmative and hold that for purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with her/his [703 N.E.2d 788] employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112.
From this analysis, we do not discern, as suggested by Hoon, that the court would also extend liability beyond supervisors and managers to any employee. In our view, the court would have adopted a more generalized language rather than referring specifically to supervisors and managers
only, if it had intended the scope of "employers" to encompass any individual employee.
Furthermore, we recognize that the U.S. Supreme Court, while interpreting Title VII of the Civil Rights Act of 1964, has held in the negative on this issue. See Faragher v. City of Boca Raton (1998),524 U.S. 775, 785. As federal case law interpreting Title VII is generally applicable to cases brought under R.C. 4112, we follow the federal authority and likewise hold that non-supervisory employees should be precluded from liability under R.C. 4112. Here, it is undisputed that Cintron was not a supervisor or manager of Hoon. Accordingly, Hoon could not assert a claim against him under R.C. 4112.
Based on the foregoing, we conclude the court properly granted summary judgment on Hoon's sexual discrimination claim in favor of the defendants.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLTF-APPELLANT IN GRANTING DEFTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT ON PLTF-APPELLANT'S CLAIMS OF RETALIATORY DISCRIMINATION.
Hoon claims that her success on her retaliatory discrimination claim does not require Superior to have taken a formal adverse employment action against her, and alternatively, she maintains that she was constructively discharged, thus satisfying the element of an adverse employment action required for an retaliation claim. Superior claims that Hoon quit on her own initiative and was offered a severance agreement; therefore, it asserts that it took no adverse employment action against Hoon necessary for a retaliation claim to succeed. It further asserts that Hoon cannot show that she was constructively discharged either, and, therefore, she fails to establish a prima facie case of retaliatory discrimination.
R.C. 4112.02 provides, in relevant part:
It shall be an unlawful discriminatory practice:
* * *
 (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.
The court in Chandler v. Empire Chem., Inc. (1994), 99 Ohio App.3d 396,402, summarized what a plaintiff must show in order to establish a retaliation claim:
 * * * In order to support her claim of retaliatory discharge, [plaintiff] was required to establish (1) that she engaged in protected activity; (2) that she was the subject of adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action. Jackson v. RKO Bottlers of Toledo, Inc. (C.A.6, 1984), 743 F.2d 370, 375. If she successfully established a prima facie case, the burden shifted to Empire to articulate a legitimate reason for its action. Burrus v. United Telephone Co. of Kansas (C.A.10, 1982), 683 F.2d 339, 343, certiorari denied (1982), 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633. If it carried that burden, the burden then shifted back to Chandler to show that the articulated reason was merely a pretext. Id. (Emphasis added.)
See, also, Stepic v. Penton Media, Inc. (Dec. 14, 2000), Cuyahoga App. Nos. 77318, 77737, unreported.
The lack of an adverse employment action, however, is not fatal to a retaliation claim because a constructive discharge qualifies as such for purposes of a retaliation claim. See Patton v. Sears, Roebuck Co. (C.A.6, 2000), 234 F.3d 1269.
Our court, in Minter v. Cuyahoga Community College (Feb. 17, 2000), Cuyahoga App. 76707, unreported, summarized the Ohio law in connection with constructive discharge as follows:
 In Ohio, the test for determining whether an employee has been constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272. In determining whether there was a constructive discharge, a court must "determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent." Id. at 589, 664 N.E.2d 1272.
Here, the record is devoid of evidence that Superior fired Hoon: it merely presented a severance agreement to Hoon for her review; Hoon neither signed it nor returned to work. Therefore, Hoon must show she was constructively discharged in order to establish her retaliatory discrimination claim.
The record reveals that Superior gave Hoon a performance review on June 12, 2000, which, by setting forth goals for Hoon in the coming year and recommended a re-evaluation in six months to review her new responsibilities, reflected its intent to continue employing Hoon. Furthermore, after her second complaint, Superior's action effectively stopped all further inappropriate sexual conduct by Cintron. Finally, Superior responded to Hoon's report of Cintron's comment by offering to transfer Hoon. Thus, Hoon fails to offer evidence to demonstrate that Superior's actions made Hoon's working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign, or that the cumulative effect of Superior's actions would make a reasonable person believe that termination was imminent.
Based on the record, we thus conclude no genuine issue of material facts exists as to whether Superior took adverse employment action against Hoon or whether she was constructively discharged, and therefore Hoon's claim of retaliation fails as a matter of law. Accordingly, the court properly granted summary judgment in favor of the defendants, and we overrule this assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J. and FRANK D. CELEBREZZE, JR., J. CONCUR.